FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE APPLICATION OF LAZARE KAPLAN          :
BELGIUM N.V.,                               :
                                            :
                                            :
                                            :  Misc. Civil Action No 1:14-mc-34
For Order Pursuant to 28 U.S.C. § 1782 for Issuance of:
Subpoena to HSBC Bank USA, NA               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

2014 NOV -7 P 3: 04

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

**_EX PARTE_ APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 TO ISSUE A
SUBPOENA TO HSBC BANK USA, NA FOR PRODUCTION OF DOCUMENTS FOR
USE IN A FOREIGN PROCEEDING AND MEMORANDUM IN SUPPORT OF
_EX PARTE_ APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782**

Based upon this application and the Declaration of Jamar K. Walker, Lazare Kaplan

Belgium N.V. ("LKB") applies to this Court for an Order, pursuant to 28 U.S.C. § 1782 and

Rules 26, 34, and 45 of the Federal Rules of Civil Procedure, granting LKB leave to serve HSBC

Bank USA, NA ("HBUS") with the subpoena annexed to the Walker Declaration as Exhibit A.

LKB submits this application _ex parte_ with the understanding that HBUS does not contest the

issuance of the proposed subpoena.

**Introduction**

LKB is a Belgian company and an indirect subsidiary of Lazare Kaplan International Inc.

("LKI"), a publicly-traded diamond manufacturing, distribution and trading company based in

New York City. Herein, LKB and LKI are collectively referred to as "Lazare." In 2008, LKB

invoiced (with full reservation of title) certain of its diamonds to D.D. Manufacturing N.V.

("DD"), and K.T. Collection BVBA ("KT"), two Belgian companies controlled by Erez Daleyot,

a Belgian and Israeli businessman. DD and KT are diamond wholesalers and manufacturers that

purchase rough diamonds from diamond producers such as LKB, and supply them to diamond

cutting and polishing operations worldwide.

Typically, when DD and KT identified buyers for diamonds previously consigned to them by Lazare, DD and KT would notify Lazare. Lazare would then issue invoices to DD and KT (with full reservation of title), and DD and KT would issue invoices to the buyers (with full reservation of title). Pursuant to that procedure, during the period of August 2008 through October 2008, Lazare consigned diamonds to DD and ultimately issued invoices to DD in excess of $26.5 million. Similarly, during the period of June 2008 through July 2008, Lazare consigned diamonds to KT and ultimately issued invoices to KT in excess of $11.5 million. DD and KT have not paid Lazare for the diamonds so invoiced.

On June 8, 2009, DD and KT filed an action (docket number AR 09/06191) in the Court of Commerce of Antwerp in Belgium against LKB, claiming that LKB owes $9,032,892.27 to DD. On July 6, 2009, LKB commenced an action (docket number AR 09/06654) against DD, KT, and Daleyot in the Court of Commerce of Antwerp in Belgium, asserting that LKB is owed: (a) $26,657,371.64 by DD; (b) $11,618,294.00 by KT; and (c) the sum of the amounts in (a)-(b) above (i.e., $38,275,665.64) by Daleyot (excluding interest and costs). These actions are referred to collectively as the "Belgian Actions." Central to LKB's claims and defenses in the Belgian Actions is its presentation of evidence to establish that DD, KT, and Dayelot participated in a scheme to defraud LKB. LKB has reason to believe that the funds it seeks from DD and KT in the Belgian Actions were fraudulently transferred by a number of shell companies and individuals affiliated with Dayelot (the "Dayelot-Related Entities") through their accounts held outside the United States that may have cleared through HBUS.[1] Upon information and belief, financial transactions through accounts held outside the United States that may have had dollar

---

[1] Certain of the Daleyot-Related Entities are referenced as nonparties in litigation in the United States District Court for the Southern District of New York (No. 11-Civ.-9490 (ALC)). The named parties and claims in that case are different from the foreign litigation for which the documents are sought in this application.

transactions that cleared through HBUS evidence the fraudulent activity of DD, KT, Dayelot, and their co-conspirators. Therefore LKB seeks such information from HBUS.

The trial date for the Belgian Actions is scheduled for January 27, 2015.

LKB seeks the discovery from HBUS requested in this application to pursue its claims against DD, KT and Daleyot, and to defend against DD's and KT's claims against LKB in connection with the Belgian Actions. Upon information and belief, HBUS controls documents and information relevant to the Belgian Actions, including documents reflecting the Dayelot-Related Entities' involvement in financial transactions intended to perpetrate fraud. The specific and narrowly tailored discovery this application seeks from HBUS—a non-party to the Belgian Action—is directly relevant to LKB's claims and defenses in the Belgian Actions.

HBUS has certified that it does not object to this application, and it will produce documents in response to a subpoena issued by the United States District Court for the Eastern District of Virginia. *See* HBUS Certification attached to Declaration of Jamar K. Walker ("Walker Decl.") at Ex. B.

I.    FACTUAL BACKGROUND FOR THE APPLICATION

On June 8, 2009, DD and KT sued LKB in the Court of Commerce of Antwerp. And on July 6, 2009, LKB sued DD, KT and Daleyot in the same court.

LKB is a Belgian company and an indirect subsidiary of LKI, a publicly traded diamond manufacturing, distribution and trading company based in New York City with offices at 19 West 44th Street, New York, New York. LKB's principal place of business is 9th Floor, 30-38 Hoveniersstraat, Antwerpen, B-2018, Belgium. DD and KT are two Belgian companies with principal places of business at 9-11 Schupstraat, Antwerpen, B-2018, Belgium, which are controlled by Erez Daleyot, a Belgian and Israeli businessman.

HBUS has a principal office at 1800 Tysons Boulevard, Suite 50, Mclean, Virginia

22101. Upon information and belief, HBUS has possession, custody, and control over

information relating to financial transactions reflecting DD, KT, and Daleyot's fraud because the

Dayelot-Related Entities perpetuated the fraud through transactions that cleared with HBUS or

through accounts held at HBUS. Neither HBUS, nor any other HSBC-related entity is a party to

the Belgian Actions.

II.    LEGAL ANALYSIS AND SUPPORT

       This application satisfies all of the threshold requirements of Section 1782, and all the

relevant discretionary factors favor granting the discovery. The non-privileged discovery sought

by LKB is precisely the sort contemplated by 28 U.S.C. § 1782. HBUS does not oppose.

       A.     The application Satisfies the Statutory Requirements of 28 U.S.C. § 1782

       28 U.S.C. § 1782(a) authorizes federal district courts to order discovery for use in foreign

proceedings. As stated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*,

542 U.S. 241, 246-47 (2004), to obtain discovery the applicant must make a threshold showing

that:

              (1)    the person from whom the discovery is sought either "resides" or is
              "found" in this District;

              (2)    the discovery is "for use in a proceeding" before a "foreign tribunal"; and

              (3)    the applicant qualifies as an "interested person."

*Id.* at 246-47. *See also Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998); *In*
*re Esses*, 101 F.3d 873, 875 (2d Cir. 1996).

       LKB's application meets all of the requirements of 28 U.S.C. § 1782. First, HBUS is

present in McLean, Virginia. *See In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002) (stating that

"if a person is served with a subpoena while physically present in the district of the court that

4

issued the discovery order, then for the purposes of § 1782(a) he is 'found' in that district"). Second, the discovery is "for use in a proceeding" before a "foreign tribunal"—the Belgian Actions currently pending before the Court of Commerce of Antwerp, which are proceedings in a foreign tribunal within the meaning of the statute. *See Intel*, 542 U.S. at 247-48 (stating that "tribunals" include courts that are "first-instance decisionmakers"). Third, as an actual party in the Belgian Actions, LKB qualifies as an "interested person" within the meaning of Section 1782. *See id.* at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782.").

Because LKB has demonstrated all of the statutory elements of § 1782, this Court has jurisdiction to order the relief requested.

B.     Discretionary considerations weigh in favor of granting discovery

Each of the four discretionary factors enumerated by the Supreme Court in *Intel* weigh in favor of granting the Section 1782 application. HBUS does not oppose. While the Court need not consider all of these factors in deciding to grant an application, the discretionary factors that may be considered are:

(1)     whether the persons from whom the discovery is being sought are participants in the foreign proceeding;

(2)     the nature and character of the foreign proceeding and the receptivity of the foreign tribunal to U.S. federal court judicial assistance;

(3)     whether the request is an attempt to circumvent foreign proof-gathering limitations; and

(4)     whether the discovery sought is unduly burdensome.

*Intel*, 542 U.S. at 264-65.[2]  An analysis of *Intel*'s discretionary factors results in a conclusion that granting LKB's application would be a sound exercise of this Court's discretion.

First, this Court's assistance is necessary because HBUS is not a participant in the Belgian Actions.  The Supreme Court stressed in *Intel* that the assistance provided under 28 U.S.C. § 1782 is particularly needed, where, as here, the discovery is sought from persons who are not participants in the proceeding abroad.  *Intel*, 542 U.S. at 244 ("[N]onparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.").  Without this Court's assistance, LKB will have no other means to obtain the information that they seek from HBUS.

Second, the need for the Court's assistance is particularly strong given the nature and character of the foreign proceedings.  The foreign tribunal, the Court of Commerce of Antwerp, is the court of first instance in which civil actions are brought by private litigants for damages in Antwerp.  *See* Walker Decl. at Ex. C (Declaration of Francine Wachsstock, dated November 6, 2014) ¶ 4.  The Belgian Actions are the Belgian counterpart to a civil action that would be commenced in the United States in a federal district court or state trial court.  *Id.*  The courts of Belgium are and have historically been receptive to the assistance of the courts of the United States.  *Id.* ¶¶ 8-10.[3]

Third, this application seeks evidence LKB needs to present in defense and pursuit of its claims in the Belgian Actions.  In determining whether a petition is an effort to circumvent

---

[2] Once the statutory requirements of Section 1782 are met, as they are here, the district court is called upon to exercise its discretion liberally in favor of granting discovery.  *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995) (stating that policy underlying Section 1782 generally obliges district courts to assist the applicant in the requested discovery).

foreign proof-gathering restrictions, the consideration for the Court is whether the discovery is being sought in bad faith. *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008). LKB's application is in no way an attempt to circumvent foreign proof-gathering restrictions. Under the applicable procedure of the Court of Commerce of Antwerp, the Belgian Action may be resolved on January 27, 2015, without any opportunity to take discovery or introduce evidence from third parties. By this application, LKB seeks discovery critical to its claims and defenses in the Belgian Actions.

Fourth, the requests are narrowly tailored to obtain information that LKB needs to prosecute its claims and defend itself. Indeed, LKB seeks evidence that may prove DD, KT, and the Dayelot-Related Entities' fraud by transferring funds through accounts that were cleared through HBUS. LKB's proposed subpoena identifies key entities to aid HBUS's search for a specific set of responsive records. *See* Walker Decl. at Ex. A.

C.      Issuance of the subpoenas on an *ex parte* basis is appropriate

As noted above, HBUS has reviewed and does not contest the issuance of the Subpoena. *See* Walker Decl. at Ex. B. Accordingly, issuance of the subpoenas on an *ex parte* basis is appropriate, and will not prejudice the rights of the subpoenaed party.

## CONCLUSION

For all the reasons stated, LKB respectfully requests that the Court grant its application under 28 U.S.C. § 1782 for the issuance of the subpoena attached as Exhibit A to the Walker Declaration.

---

[3] Belgium has demonstrated a mutual interest in cooperation in the exercise of justice. Belgian courts have expressly authorized Belgian banks to produce customer's bank records pursuant to subpoenas issued by U.S. courts. *See* Walker Decl. at Ex. C ¶ 10.

7

Respectfully submitted by:

Jamar K. Walker (VA Bar #82773)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Tel: 202.662.5451
Fax: 202.778.5451
Email: jwalker@cov.com
Counsel for Lazare Kaplan Belgium N.V.